**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MARK K.,**

                    **Plaintiff,**

                       v.

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

                    **Defendant.**
_____

**5:18-cv-627
(GLS)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Office of Peter W. Antonowicz<br>148 West Dominick Street<br>Rome, NY 13440 | PETER W. ANTONOWICZ, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. GRANT C. JACQUITH<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Ellen E. Sovern<br>Regional Chief Counsel<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | DAVID L. BROWN<br>ALEXANDER BROCHE<br>Special Assistant U.S. Attorneys |

**Gary L. Sharpe
Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Mark K. challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Mark's arguments, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## II. Background

On March 9, 2015, Mark filed an application for SSI, alleging a disability onset date of January 1, 2011. (Tr.[1] at 254, 347-52.) After his application was denied, (Tr. at 271-76), he requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 277-79), which was held on December 29, 2016, (*id.* at 200-28). On June 8, 2017, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 7-24.) This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 1-6.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8).

Mark commenced the present action by filing his complaint on May 30, 2018 wherein he sought review of the Commissioner's decision. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 8.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 11, 12.)

### III. Contentions

Mark contends: that (1) the ALJ erred in failing to find his mental impairments non-severe, (Dkt. No. 11 at 1); (2) the ALJ improperly assessed Mark's residual functional capacity (RFC),[2] (*id.* at 4); (3) the ALJ did not properly consider his alleged manipulative limitations, (*id.* at 1); and (4) the ALJ failed to properly consider the opinion of his treating physician, (*id.*).

### IV. Facts

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 10-20; Dkt. No. 11 at 1-9; Dkt. No. 12 at 1.)

---

[2] Although Mark does not devote a point heading to this argument, and only addresses it under his statement of facts, it is a salient argument that must be addressed.

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, Mark contends that the ALJ erred by failing to find his mental impairments "severe." (Dkt. No. 11 at 11-12.) The Commissioner counters, and the court agrees, that the ALJ's severity determination was free from legal error and supported by substantial evidence. (Tr. at 12-15; Dkt. No. 12 at 4-8.)

At step two of sequential evaluation, an ALJ must decide whether a claimant has "severe impairments." 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant's application is denied. *Id.* If so, evaluations proceed to subsequent sequential steps. *Id.* § 416.920(a)(4). "Impairment(s)" must

result from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 416.921. "Severe" impairments are those that significantly limit a claimant's physical or mental ability to do basic work activities. *Id.* § 416.922(a). The phrase "significantly limits" is not synonymous with "disability." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Rather, it serves to "screen out *de minimis* claims." *Id.* Consequently, "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (internal quotation marks and citations omitted).

When mental impairments are at issue, step two severity findings are determined after applying a "special technique" set out in 20 C.F.R. § 416.920a(b)-(e), which helps the ALJ determine whether a claimant has medically-determinable mental impairments and whether such impairments are severe. An ALJ first "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [those] findings." *Id.* § 416.920a(b)(1). Next, they must assess the degree

5

of functional limitations, *id.* § 416.920a(b)(2), *i.e.*, the degree to which a claimant's impairments functionally limit his or her "ability to function independently, appropriately, effectively, and on a sustained basis," *id.* § 416.920a(c)(2). To complete this assessment, they must "rate the degree of [claimant's] functional limitation" in four areas: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) concentrate, persist, or maintain pace"; (4) "and adapt or manage oneself." *Id.* § 416.920a(c)(3). The rating scale for these categories is a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). An ALJ will generally conclude that mental impairments are not severe when a claimant receives a rating of "none" or "mild." *Id.* § 416.920a(d)(1).

In this case, the ALJ properly found, based upon substantial evidence in the record, that Mark had no more than mild limitations in any of these areas. (Tr. at 14.) With regard to the first functional area of understanding, remembering, or applying information, there is substantial evidence in the record to support the finding that Mark had no limitations. For example, he is able to manage his medications, (*id.* at 212-13), play computer games, do his own laundry and dishes, and cook his own meals,

(*id.* at 214). His thought process was reported as "coherent and goal directed with no evidence of . . . disordered thinking." (*Id.* at 758.) Additionally, although Mark points to Dr. James Shapiro's findings of "significant symptoms and limitations," (Dkt. No. 11 at 12), such findings note that Mark's "recent and remote memory skills were intact. He was able to recall three objects immediately and after four minutes[,] restate 4 digits forward and 3 digits backward." (Tr. at 758-59.)

In the second functional area of interacting with others, the ALJ found no more than mild limitations, which is also supported by substantial evidence in the record. For example, although Mark had anger issues in the past, (*id.* at 218), he has maintained a romantic relationship with his girlfriend, (*id.* at 215-16), uses public transportation, (*id.* at 210), has been found to be cooperative, (*id.* at 742, 758, 824, 934, 951), and "[h]is manner of relating, social skills, and overall presentation was adequate," (*id.* at 758). Additionally, Mark attended group therapy sessions, where he "was able to provide an extemporaneous mini-disclosure to introduce himself to the group . . . [and] participated fully in the group process and offered up some personal experience to assist others." (*Id.* at 966.)

In the third functional area of concentrating, persisting, or maintaining

7

pace, the ALJ found that Mark has mild limitations, which is supported by substantial evidence in the record. (*Id.* at 14.) For example, he was observed to have no issues in understanding, coherency, concentrating, or talking, (*id.* at 366), and his "attention," "concentration," "recent memory," and "remote skills" were "intact," (*id.* at 758), as "[h]e was able to do counting, simple calculations like 8x2, and serial 3s from 20. . . . [and] was able to recall three objects immediately and after four minutes[,] restate 4 digits forward and 3 digits backward," (*id.* at 758-59). He also testified that he watched television during the day and played computer games. (*Id.* at 214, 216.)

As for the fourth functional area of adapting or managing oneself, the ALJ found that Mark has no limitations, which is supported by substantial evidence. (*Id.* at 14.) For example, he "is able to independently dress, bathe, and groom," can "manage money," (*id.* at 759), and established care for himself at Madison County Mental Health to control his anger, (*id.* at 218, 930). He also received treatment for substance abuse, completed a program, and reported that he has not used cocaine since 2000. (*Id.* at 931). Therefore, contrary to Mark's contention, at step two, the ALJ properly evaluated the severity of his impairments, and there is substantial

8

evidence to support the ALJ's determination that his mental impairments are non-severe.

**B. <u>RFC</u>**

As noted above, Mark argues, albeit in one stray sentence, that the ALJ failed to address Mark's mental impairments in his RFC. (Dkt. No. 11 at 4). For this reason, remand is required. A claimant's RFC "is the most [he] can still do despite [his] limitations," because "impairment(s), and any related symptoms . . . may cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence," *id.* § 416.945(a)(3), and "all of [his] medically determinable impairments of which [the ALJ] is aware, including [his] medically determinable impairments that are not 'severe,'" *id.* § 416.945(a)(2). The ALJ considers a claimant's RFC at steps four and five of the sequential evaluation. *Id.* § 416.920(a)(4)(iv),(v).

Here, at steps four and five, the ALJ's assessment of Mark's RFC did not include any mental limitations, despite his previous assessment of Mark's mild limitations in the functional areas of interacting with others, and concentrating, persisting, or maintaining pace. (Tr. at 14-15.) Rather, after

9

noting that the analysis of mental limitations for steps two and three differs from the analysis for steps four and five, with the latter steps requiring "a more detailed assessment," the ALJ then stated "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (*Id.* at 15.) However, the ALJ did not include any mental limitations in the RFC, and the ALJ never provided an explanation as to why he chose not to include any mental limitations in the RFC, despite his previous assessment of Mark's mild limitations. *See Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (remanding ALJ's denial of claimant's application for SSI because of ALJ's failure to include claimant's previously assessed mental impairments in the RFC). Notably, the ALJ also did not take the time to include any of his observations of Mark's previously assessed mental limitations in steps four or five. This was error. *See Tedesco v. Saul*, No. CV 18-933, 2019 WL 3219229, at *4-5 (D.N.M. July 17, 2019) (finding that, although ALJ did not include claimant's mental limitations in the RFC, the ALJ "peppered" step four "with observations about Plaintiff's mental impairments"). Rather, the ALJ only focused on Mark's physical limitations. (Tr. at 15-18.) For these reasons, the Commissioner's

10

decision is reversed and remanded for further administrative proceedings.

## C. Remaining Findings and Conclusions

Because Mark's remaining contentions, (Dkt. No. 11 at 12-14), may be impacted by the subsequent proceedings directed by this Order, it would be premature to address them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge